IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE AIELLO-ZAK, | ) | CASE NO. 5:13 CV 987 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by Aiello-Zak ("Zak") under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 17. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 4.

[6] ECF # 11.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] Although a telephonic oral argument had been scheduled for August 6, 2014,[10] after review of the briefs, the issues presented, and the record, it was determined that the case would be decided without oral argument.[11]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Zak, who was 47 years old at the time of the administrative hearing,[12] is married and living at home with her husband and daughter, whom Zak home-schools.[13] She has a high school education and worked previously as an order clerk, a receptionist, and an accounting clerk.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Zak had the following severe impairments: major depressive disorder, depressive disorder, NOS, and panic disorder with agoraphobia.[15]

---

[7] ECF # 18 (Commissioner's brief); ECF # 15 (Zak's brief), ECF # 19 (Zak's reply brief).

[8] ECF # 18-1 (Commissioner's charts); ECF # 15-1 (Zak's charts).

[9] ECF # 14 (Zak's fact sheet).

[10] ECF # 21.

[11] ECF # 22.

[12] Transcript ("Tr.") at 22, 24.

[13] *Id.* at 17.

[14] *Id.* at 22.

[15] *Id.* at 15.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Zak's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember and carryout simple, routine tasks which can be learned in 30 days or less. She is limited to low stress tasks which is defined as precluding high production quotas such as piecework or assembly line work, strict time requirements, arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety of others. She can make judgments on simple work related decisions and task she performs should be repetitive so the environment is relatively static. She should have limited and superficial interaction with coworkers and the public.[16]

The ALJ decided that this RFC precluded Zak from performing her past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above,[18] the ALJ determined that a significant number of jobs existed locally and nationally that Zak could perform.[19] The ALJ, therefore, found Zak not under a disability.[20]

---

[16] *Id.* at 17.

[17] *Id.* at 22.

[18] *Id.* at 23.

[19] *Id.*

[20] *Id.*

**C.     Issues on judicial review and decision**

Zak asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Zak's challenge presents the following issue for judicial review:

> The ALJ assigned the opinion of Bradly Winkhart, M.D., Zak's treating psychiatrist, some to no weight; and the opinion of Erin Hillard, D.O., her treating physician, minimal weight. Although the ALJ provided only limited and cursory reasons for these weight assignments in evaluating the opinions, she extensively discussed the treatment notes generated by these sources elsewhere in her decision. Did the ALJ properly weigh and articulate as to these opinions?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard. The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

2.  *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such

---

[24] 20 C.F.R. § 404.1527(d)(2).

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a

---

[31] *Id.* at 535.

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* at 546.

[36] *Id.*

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

[42] *Rogers*, 486 F.3d at 242.

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of

---

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree

---

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

## B.     Application of standards

This case turns on whether the ALJ articulated good reasons for not granting controlling weight to the opinions of Drs. Winkhart and Hillard.

Although Zak argues that the ALJ failed to follow the prescribed procedure for addressing opinions of treating physicians set out in *Gayheart* – a position which the Commissioner does not essentially contest[72] – recent authority has held that so long as an ALJ adequately addresses the factors required by *Gayheart* and articulates good reasons for

---

[69] *Id.* at 410.

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

[72] *See*, ECF # 18 at 12 ("[A]lthough the ALJ did not provide a succinct inquiry [*sic*] , a review of her decision shows that she considered the first step [of the *Gayheart* analysis] and provided good reasons for not according controlling weight to Dr. Winkhart's April 2011 assessment.")

discounting the opinion of a treating source, the Commissioner's decision will not be upset by a failure to strictly follow the *Gayheart* template. As the Sixth Circuit recently observed in *Dyer v. Social Security Administration*,[73] the opinion of a treating source may be discounted "where that opinion was inconsistent with other evidence of record or the assessment relied on subjective symptoms without the support of objective findings."[74] In such situations, the ALJ must give good reasons for the weight given and, in arriving at that decision, must consider the "specific factors" applicable to weighing the opinion of a treating source while supporting the "good reasons" given with evidence in the record.[75] However, as the Sixth Circuit also teaches, in considering the relevant factors, an ALJ is under no obligation to conduct an "exhaustive factor-by-factor analysis" of the treating physician rule before deciding on a determination of weight.[76] Stated differently, what is required is that the decision must be "sufficiently specific to make clear the weight given to the opinion and the reasons for that weight."[77]

In particular, where the ALJ carefully summarized the results of the claimant's objective medical records, as well as noting the daily activities of the claimant, and then

---

[73] *Dyer v. Soc. Sec. Admin.*, No. 13-6024, __ F. App'x __, 2014 WL 2609548 (6th Cir. Jun. 11, 2014).

[74] *Id.*, at *2.

[75] *Id.*

[76] *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

[77] *Brasseur v. Comm'r of Soc. Sec.*, 525 F. App'x 349, 350 (6th Cir. 2013) (citing *Gayheart,* 710 F.3d at 376).

showed why the opinion of the treating source was inconsistent with these facts, the decision to accord the opinion of the treating source "not much weight" was supported by substantial evidence and not violative of *Gayheart*.[78] The Court in *Dyer* especially observed that "daily activities such as those reported by [the claimant] herself can constitute substantial evidence that a claimant is not disabled."[79]

Here, as to the opinion of Dr. Winkhart, the ALJ noted the dates when Dr. Winkhart treated the claimant, summarized the treatment notes from those visits, and then reviewed Dr. Winkhart's April 4, 2011, assessment of Zak's mental limitations in work-related areas.[80] The ALJ discounted those opinions by noting that Dr. Winkhart's progress notes from November 10, 2011, showed that after Zak was switched from Paxil to Celexa, Zak reported that she was "able to function," though not at 100 percent.[81] The Commissioner argues here that this brief statement of reasons was actually an explanation, "[i]n other words," that Dr. Winkhart's limitation opinion was inconsistent with Zak's own testimony about her level of functioning and Dr. Winkhart's office note that "medication improved [Zak's] symptoms."[82]

---

[78] *Dyer*, 2014 WL 2609548, at **3-4.

[79] *Id.*, at *4 (citation omitted).

[80] Tr. at 20.

[81] *Id.*

[82] ECF # 18 at 13.

As Zak observes, this argument does not specifically address the individual elements of mild, moderate, and marked limitations that Dr. Winkhart found in his April 4, 2011, evaluation.[83] Zak contends that "Dr. Winkhart's opinion is essentially a compartmentalized breakdown of the well-attested specific factors that contribute to this inability to work."[84]

Further, Zak maintains that the failure of the ALJ to give more than a single example of how a medication change produced some improvement represents the lack of a good reason for discounting the opinion of Dr. Winkhart.[85] She contends that the requirement of providing good reasons, sufficiently articulated, was not met here with such a "cursory finding."[86]

Zak's analysis is correct insofar as it goes. To the extent that the ALJ here cites any specific reasons for discounting the opinion of this treating source, the stated reason is limited to a single, somewhat innocuous statement that a medication change produced some improvement. That alone is hardly a good and sufficient reason to discount the opinion of a treating psychologist as to the various limitations on Zak's work-related functioning.

But the Commissioner argues that this cursory statement of reasons must be read together with the determination that Zak's daily activities are not consistent with the limitations expressed by Dr. Winkhart. While this argument comes close to being the kind

---

[83] ECF 15 at 5.

[84] *Id.* (citing ECF # 14 at 2).

[85] *Id.* at 6.

[86] *Id.*

of *post hoc* rationalization that cannot save an insufficiently articulated opinion, it remains true, as noted above, that contradictory daily activities of the claimant can provide substantial evidence for finding a claimant not disabled. And, as found in *Dyer*, findings concerning a claimant's daily activities can be sufficient reason to accord less weight to contradictory conclusions in the opinion of a treating source.[87]

Zak herself spends considerable time discussing the ALJ's reasons for finding that she was not credible, arguing basically that the ALJ misconstrued the evidence cited to conclude that she was not fully credible in her statement of her limitations.[88] However, a review of the record shows that this evidence can be construed in different ways and, as such, any ultimate determination is properly the province of the Commissioner. As the Sixth Circuit has stated, this Court must defer to the Commissioner's findings if supported by substantial evidence "even if there is substantial evidence in the record that would have supported an opposite conclusion."[89]

Here, the ALJ found that although there is evidence of anxiety and depression, the evidence "does not support the degree of anxiety or frequency of panic attacks the claimant

---

[87] *Dyer*, 2014 WL 2609548, at **3-4.

[88] ECF # 15 at 6-10.

[89] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal citations omitted).

alleges to the extent she is precluded from performing basic work activity within the parameters of the above residual functional capacity."[90] She found:

(1)  claimant's history of having panic disorders for 17 years while being hospitalized only once, along with some counseling, was inconsistent with severity;[91]

(2)  Dr. Hillard in 2009 found the claimant's anxiety was well controlled and she was doing well;[92]

(3)  there was no evidence of anxiety or complaints of panic attacks in the May 2010 visit to Dr. Hillard, and no such complaints in the December 2010 visit;[93] and,

(4)  no treatment at all from Dr. Hillard from December 2010 to April 2012.[94]

In addition, the ALJ cited a paragraph of other examples that included claimant going out with friends, seeing her children, and being dizzy while out shopping.[95]

Zak argues here that these are isolated, discrete examples of doing well that are consistent with a condition that "fluctuates in intensity and severity" and are thus insufficient to form the basis for a determination that her limitations are not as severe as she claims.[96] She

---

[90] Tr. at 18.

[91] *Id.* at 19.

[92] *Id.* at 18.

[93] *Id.* at 18-19.

[94] *Id.* at 19.

[95] *Id.* at 21.

[96] ECF # 15 at 9.

argues that it is not surprising that she was able to do certain things when she was "feeling better than usual."[97]

That said, and further granting that single episodes may not reflect a capacity for performing consistently at a job, the Commissioner is entitled to act within a zone of choice in weighing the evidence and determining functional capacity.[98] Regardless of how I may have weighed this same evidence, I find that Zak has not provided a reason for me to disturb the conclusion of the ALJ as to the severity of Zak's symptoms. As such, that finding may serve as substantial evidence to discount the contrary opinion of Dr. Winkhart.

I now consider the opinion of Dr. Hillard. In that opinion, which was given in April, 2012, Dr. Hillard noted that Zak has been worsening over the last 18-24 months, that she is not currently stabilized, and that her condition is likely to deteriorate.[99] But the ALJ found that because (1) Dr. Hillard saw Zak only once, (2) he is not a psychiatrist or a psychologist, and (3) the medical evidence prior to meeting with Dr. Hillard showed Zak's situation was "well controlled," Dr. Hillard's mental assessment was entitled to only minimal weight.[100] This statement of reasons is clear of itself, and there are sufficient reasons to discount the mental assessment of Dr. Hillard.

---

[97] *Id.* at 10.

[98] *Buxton*, 246 F.3d at 772.

[99] ECF # 14 at 3 (citing record).

[100] Tr. at 21.

Therefore, while the ALJ's handling of the treating source opinions was not a textbook model of *Gayheart* compliance, and while on *de novo* review I may have concluded differently, I find that the ALJ here did articulate good and sufficient reasons for the decision to accord lesser weight to the opinions of Dr. Winkhart and Dr. Hillard. Thus, I find the decision of the Commissioner is supported by substantial evidence and must be affirmed.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Zak had no disability. The denial of Zak's application is affirmed.

IT IS SO ORDERED.

Dated: September 17, 2014                              s/ William H. Baughman, Jr.
                                                      United States Magistrate Judge